1

2

3

4

5

6          UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8

9    JAMES PHILLIPS, et al.,                    Case No.17-cv-06893-HRL

              Plaintiffs,
10

11        v.                                    **ORDER ON DEFENDANT'S
                                                MOTION TO TRANSFER VENUE**
12   WIPRO, LTD.,                               Re: Dkt. No. 18

13            Defendant.

14

15         Plaintiffs James Phillips and Robert Saemian ("Plaintiffs"), claiming to represent a class,

16   sue Wipro Limited ("Wipro") for employment discrimination.  Wipro moves to transfer the case

17   from this district to the Southern District of Texas.  Dkt. No. 18.  For the reasons explained below,

18   the Court grants the motion.

19         All parties consented to magistrate judge jurisdiction.  Dkt. Nos. 8, 12

20   **I.     BACKGROUND**

21         Wipro, an information technology company, is incorporated in India and has its US

22   headquarters in New Jersey.  Dkt. No. 19-1, Sachdev Decl. ¶ 4.  The company boasts offices

23   across the United States, including in Houston, Dallas, and three in Northern California.

24         Phillips and Saemian both worked at Wipro and say the company favors South Asians,

25   especially Indians.  In the complaint, Phillips says he started at Wipro in June 2013, when the

26   company assigned him to a client in Denver.  Dkt. No. 1 ¶ 22.  A few months later, Wipro

27   acquired an H-1B visa for someone from India, and this new recruit eventually took Phillips' job.

28   *Id.* ¶ 24.  Phillips was placed "on the bench," a kind of limbo in which he spent his time applying

1    for a new position within the company. *Id.* ¶¶ 13, 24-29. Phillips sought out the assistance of

2    several third party recruiters, one of whom was based in Milpitas, California.[1] *Id.* 28. Phillips'

3    efforts never resulted in a full-time position, and he says he was repeatedly passed over in favor of

4    people from South Asia. Phillips lives in Florida. *Id.* ¶ 3.

5         Saemian worked for Wipro between May 2014 and July 2015. *Id.* ¶ 31, 43-44. At first, he

6    worked from his home in Orlando, making frequent trips to Wipro's Houston office, but the

7    company eventually asked him to move permanently to Texas. *Id.* ¶ 32, 41, 43. Saeimian sold his

8    house and left for Houston, but upon arrival he was asked to train a new South Asian person to do

9    his job. Two weeks later, Wipro ended Saemian's employment. *Id.* ¶¶ 43-44. In his time with the

10   company, Saemian observed the company's preferential treatment of South Asians and he

11   complained to his manager, Richard Prime. *Id.* ¶¶ 30-30. Saemian still lives in Texas. *Id.* ¶ 4.

12        Plaintiffs sued in this district and Wipro moved to have the case transferred to the U.S.

13   District Court for the Southern District of Texas, specifically to Houston. Along with the motion,

14   Wipro submitted a request for judicial notice containing information comparing caseloads in this

15   court and in the Houston district court. Dkt. No. 19, Req. for Judicial Notice ¶ 1. Wipro also

16   submitted a declaration from Saloni Sachdev, the "Head-Function-Human Resources." Sachdev

17   Decl. ¶ 3. Sachdev explains that although Wipro uses third party recruiters as part of its hiring

18   process, those recruiters "have no authority to hire, fire, or make any employment decision[s.]"

19   *Id.* ¶ 6. He also says he reviewed company records to try to locate people who worked in Wipro's

20   Houston office around the time Saemian did. He says that of the twenty employees who left

21   Wipro between January and November 2015 (Saemian's employment ended in June 2015),

22   seventeen appear to live in or near Houston. *Id.* ¶ 10. Richard Prime, Saeimian's manager, is

23   based in the United Kingdom, but he makes frequent trips to Houston. *Id.* ¶ 8

24        Plaintiffs opposed the motion, Dkt. No. 22, and the Court heard arguments from both sides

25   at a hearing on March 13, 2018.

26

27   _____

[1] While on the bench, Phillips worked with at least three third party recruiters, including the one
28   based in Milpitas. Dkt. No. 1 ¶¶ 26-28. The complaint is conspicuously silent about where the
     other two were located.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice" to any district where the case "might have been brought."  The moving party bears the burden of making a strong showing that transfer is warranted.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted).  Transfer under § 1404(a) is within the sound discretion of the court.  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

## III.    DISCUSSION

Plaintiffs do not dispute that this case might have been brought in the Southern District of Texas.  The court in Texas would have subject matter jurisdiction, as all of Plaintiffs' claims arise under federal law.   Wipro is subject to personal jurisdiction in Texas, as it conducts substantial business in Dallas and Houston.  Likewise, venue would be proper in Houston, as Saemian's claim revolves around his work, and ultimate termination, at Wipro's Houston office.  *See* 28 U.S.C. § 1391(b)(2).

Turning to whether the case should be transferred, the parties agree that the Court should consider five factors: (1) the plaintiff's choice of forum; (2) convenience of the parties and the witnesses; (3) ease of access to sources of proof; (4) local interest in the controversy; (5) familiarity of each forum with the applicable law; (6) relative congestion in each forum.  *See Gupta v. Perez*, No. 5:14-CV-01102 HRL, 2014 WL 2879743, at *2 (N.D. Cal. 2014) (citations omitted).

### A.    Plaintiff's Choice of Forum

Wipro says Plaintiffs' choice of forum is entitled to little deference.  Saemian lives in Texas, Phillips in Florida, and neither ever worked in Northern California.  Dkt. 18 at 10-12. Phillips communicated with a recruiter in Milpitas, but that is the only link between the case and this district.  The Court should further discount Plaintiffs' choice of forum because this is a class

3

1   action. *Id.* at 12.

2         Plaintiffs emphasize that Wipro has a large presence in Northern California. Dkt. No. 22 at

3   9. They say unlawful employment practices occurred here in the course of Phillips' interaction

4   with the local recruiter.[2] *Id.* at 8. Plaintiffs also argue that their choice of venue is entitled to

5   additional deference because counts two and three of the complaint arise under Title VII of the

6   Civil Rights Act of 1964. *See Wellens v. Daiichi Sankyo Co.*, C 13-00581 CW, 2013 WL

7   3242294, at *2-3 (N.D. Cal. 2013) ("the Title VII venue provision 'influences the contours of the

8   section 1404(a) analysis.'") (citation omitted).

9         Although a plaintiff's choice of forum is generally accorded substantial weight, it "is not

10  the final word." *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). "The

11  weight given to the plaintiff's choice of forum diminishes when the plaintiff resides outside the

12  chosen forum." *Lopez v. Chertoff*, No. C06–05000 RMW, 2007 WL 2113494, at *2 (N.D. Cal.

13  2007) (*citing Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir.

14  1998)). In deciding the weight to be given to a plaintiff's choice, "consideration must be given to

15  the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's

16  contacts, including those relating to his cause of action." *Pacific Car & Foundry Co.*, 403 F.2d at

17  954. A plaintiff's choice is entitled to less deference in class actions. *Lou v Belzberg*, 834 F.2d

18  730, 739 (9th Cir. 1987); *see also* 17 *Moore's Federal Practice - Civil* § 111.13 ("the plaintiff's

19  choice of forum is largely fortuitous, such as class actions and shareholder derivative actions,

20  where putative class members may reside in many different states.")

21        Here, the balance of factors weighs against deference to Plaintiffs' choice of forum.

22  Neither plaintiff lives in the Northern District, ever worked in the Northern District, or even

23  applied for a job in the Northern District. The only thing tying the case to this district is the

24  recruiter in Milpitas, who is not a party and, according to Wipro, had no authority to make any

25  decisions about Phillips' job application. Sachdev Decl. ¶ 6. The recruiter is, at most, a witness in

26

27  ---

28  [2] At the March 13 hearing, Plaintiffs' counsel added that Saemian made multiple trips to Northern California to pitch business on behalf of Wipro. These trips took place when Saemian was still working out of his home in Orlando, and working primarily with Wipro staff in Houston.

4

1    this case, and so far he is the only witness Plaintiffs have identified as living in the Northern

2    District. Wipro has a large presence here, but that is less important than Wipro's presence here as

3    it relates to the allegations in the complaint. Plaintiff's complaint instead suggests that most

4    people who might be witnesses in this case are back in Texas, where Saemian and many of his

5    former colleagues are. Some of those people might be in Dallas, but Dallas is closer Houston than

6    San Jose.

7         Title VII's venue provision does not advance Plaintiffs' argument much, either. "[T]he

8    effect of Title VII's venue provision is to allow suit in the judicial district in which the plaintiff

9    worked." *Wellens*, 2013 WL 3242294, at *2 (*quoting Passantino v. Johnson & Johnson*

10   *Consumer Products, Inc*., 212 F.3d 493, 504 (9th Cir. 2000)). The statute allows a plaintiff to sue

11   over an unlawful employment practice in "the judicial district in which . . . records relevant to

12   such practice are maintained . . . [or in which] the aggrieved person would have worked but for the

13   alleged unlawful employment practice . . . [or where] the respondent has his principal office." 42

14   U.S.C. § 2000e-5(f)(3). Neither plaintiff ever worked in California or even applied for a job here.

15   There are probably more records related to the hiring practices at issue in Texas, where Saemian

16   worked, than in Silicon Valley, and Wipro's U.S. headquarters is in New Jersey. In short,

17   Plaintiffs' choice is not entitled to additional deference because this is a Title VII case.

18        Plaintiffs argue that under *Parrish v. NFL Players, Inc*., C 07-00943 WHA, 2007 WL

19   1624601 (N.D. Cal. 2007), a court should be deferential to the original choice of forum in a class

20   action where the class has not yet been certified. Dkt. No. 22 at 9. The case is not apt. For one

21   thing, one of the three plaintiffs in *Parrish* actually lived in the Northern District, where the

22   plaintiffs chose to bring their suit. *See Parrish*, 2007 WL 1624601 at *6. Further, *Parish* does not

23   stand for the general proposition that a plaintiff's choice of forum is entitled to extra deference

24   prior to class certification. *See id.* On a § 1404(a) motion, a court must make a "case-by-case

25   consideration of convenience and fairness." *Id.* at *5 (*citing Stewart Org., Inc. v. Ricoh Corp*.,

26   487 U.S. 22, 29 (1988)). Those factors weighed in favor of deference to plaintiff's choice in

27   *Parrish*, but they do not in this case.

28

5

### B.      Convenience of the Parties and Witnesses

Wipro says that Texas is a more convenient forum for most of the employees – current and former – who are relevant to this case. Dkt. No. 18 at 13-15. For instance, many of Saemian's former colleagues from the Houston office are still in Texas. Richard Prime, Saemian's manager, travels frequently to Houston for business.

Plaintiffs again emphasize Wipro's large presence in Silicon Valley. Wipro has multiple offices and clients in Northern California, so there are likely many class members and witnesses nearby. *See Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 2-4 (D.D.C. 2004) (transferring venue where transferee district contained preponderance of proposed class members). Plaintiffs say they found many more online job advertisements for Wipro positions here than in the Houston area, which speaks to this district being center stage for the case. Dkt. No. 22 at 8. Further, Plaintiffs downplay the significance of travel times, arguing that if a witness has to fly anyway, a few extra hours on a plane makes no real difference. For example, Phillips lives in Florida, and Plaintiffs say "the convenience of traveling to California or Texas for trial is relatively equal." *Id.* at 11. Finally, Plaintiffs challenge Mr. Sachdev's declaration, saying it "identif[ies] a random collection of current and former employees," and fails to specify if any of them are critical to this case, or even what their testimony would be. *Id.* at 11-12.

Section 1404(a) expressly instructs courts to consider the convenience of witnesses and parties. Within this factor, parties and party witnesses are given less consideration, and non-party witnesses are given more consideration. *See Hendricks v. StarKist*, Co., 13-cv-729-YGR, 2014 U.S. Dist. LEXIS 41718, *10-11 (N.D. Cal. 2014) ("Courts give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur.") (citations omitted).

This factor also cuts against the Northern District of California being the best forum. Sachdev's declaration does not provide an ideal metric of where potential witnesses are now – it leaves out people who may have worked with Saemian but left after November 2015, and it does single out ex-employees who might have information relevant to this case. Yet the declaration

1    supports the argument that of all the people the parties (and the Court) can now reasonably expect

2    to play a role in this case, most are probably closer to Houston than San Jose.  Plaintiffs'

3    arguments about potential class members and Wipro clients in this district are not persuasive.  So

4    far, the Milpitas recruiter is the only witness Plaintiffs' have identified as having anything to do

5    with the Northern District.  Aside from that, Plaintiffs offer nothing but speculation that anyone in

6    Northern California will be relevant to the case.  By contrast, the complaint already lays out

7    specific, detailed allegations about allegedly unlawful employment practices that occurred, and

8    were observed by people working in, Wipro's Houston office.  Plaintiffs' argument that air travel

9    makes travel times equivalent is similarly not persuasive.  Additional time on a plane might not be

10   significant to Phillips, but it probably will be to Wipro employees based in Texas or New Jersey.

11          Overall, Wipro has convincingly argued that Houston is a more convenient forum for

12   parties and witnesses.

13          **C.      Ease of Access to Sources of Proof**

14          Wipro argues that this factor warrants transfer because, as noted above, most of the

15   relevant witnesses are closer to Texas than California.  Wipro speculates that Saemian and Phillips

16   might have relevant records at their residences (in Texas and Florida), and says that those records

17   might be easier to access in Houston.  Dkt. No. 18 at 15-16.  Wipro acknowledges, though, that

18   advances in information technology have largely negated the burden of transferring documents

19   from one location to another.  See *Hendricks,* 2014 U.S. Dist. LEXIS 41718, *12-13.  Plaintiffs

20   respond that if they have any relevant records at their homes, they are probably in electronic form.

21          This factor is neutral as to documentary evidence, as most records are probably in

22   electronic form.  As to testimonial evidence, however, this factor weighs towards transfer, as most

23   of the relevant witnesses – at least those the Court can glean from the complaint – seem to be

24   closer to Houston than San Jose.

25          **D.      Familiarity of Each Forum with the Applicable Law**

26          Wipro says the Houston district court is equally familiar with the applicable law because

27   Plaintiff's claims are federal, and federal courts are "equally capable of applying federal law."

28   *Allstar Mktg. Grp., LLC v. Your Store Online, LLC.*, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009).

7

1    Plaintiffs counter that another court in this district is presiding over a similar case, *Heldt v. Tata*

2    *Consultancy Services, Ltd.*, 15-cv-1696-YGR, which also involves alleged discrimination by an

3    Indian company against non-Indians in the United States (counsel for Saemian and Phillips are

4    involved in the *Heldt* case as well).  Based on an independent review of the docket in *Heldt*, the

5    Court notes that Judge Rogers denied the defendant's request to transfer venue under § 1404(a).

6    Dkt. No. 44.  However, according to the complaint, at least one of the plaintiffs in *Heldt* actually

7    interviewed for, and worked at, jobs in Northern California. Dkt. No. 82 ¶ 18.  The Court

8    concludes that, as to this case, this factor is neutral.

9            **E.      Relative Congestion in Each Forum**

10           Wipro says the Southern District of Texas is "marginally less congested" than this district,

11   with 551 weighted filings in per judgeship in Texas compared to 553 here.[3]  Plaintiffs disagree,

12   pointing out that, in the twelve months preceding September 2017, courts in this district resolved

13   cases slightly quicker than their sister courts in the Southern District of Texas.  The median time

14   from filing to final disposition in this district was 7.2 months, versus 7.8 months in Houston.  The

15   Southern District of Texas also had a higher percentage of cases more than three years old (7.2%

16   compared to 6.2% in this district).

17           The parties did not identify a substantial difference in congestion between this district and

18   the Southern District of Texas.  The Court concludes that this factor is neutral.

19   **IV.    CONCLUSION**

20           Having determined that plaintiff's choice of forum is entitled to considerably less deference

21   here, and that all other factors, on balance, either favor transfer or are neutral, the Court in the

22   exercise of its discretion finds that a transfer to the Southern District of Texas is warranted.

23   Accordingly, Wipro's motion to transfer venue is GRANTED.   The Clerk of the Court shall

24   transfer this case to the United States District Court for the Southern District of Texas.

25

26

27   [3] The Court takes judicial notice of the docket congestion data provided by Wipro, which the
     company obtained from the website of the Administrative Office of the U.S. Courts.

28

8

**IT IS SO ORDERED.**

Dated: March 14, 2018

_____

HOWARD R. LLOYD
United States Magistrate Judge

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28