United States District Court
Southern District of Texas
**ENTERED**
March 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES PHILLIPS, *et al*, | § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:18-CV-821 |
| WIPRO, LTD., | § § | |
| Defendant. | § § | |

## ORDER

Before the Court are Plaintiffs' Motion for Class Certification (the "Motion") (Doc. #171), Defendant's Response (Doc. #199), and Plaintiffs' Reply (Doc. #223). Having reviewed the parties' arguments and applicable law, the Court denies the Motion.

**I.   Background**

Defendant Wipro Limited is a information technology ("IT") consulting business incorporated in the Republic of India that employs over 200,000 employees worldwide, with approximately 13,000 employees in the United States. Doc. #199, Ex. 7 ¶ 3. Defendant contracts with U.S. companies to provide IT-related services, either onsite at the client's business or remotely. *Id.* ¶ 4. Defendant categorizes employee positions into different "career bands" based on the level of responsibility and skill required for each role, ranging from A1 (lowest-level employee) to D2 (highest-level employee). Doc. #172, Ex. 38 at 3. To be eligible for a promotion within the company, an employee must be employed for twelve consecutive months in their current career band. *Id.* at 2–3.

The majority of Defendant's U.S. employees perform work directly on behalf of clients through discrete client projects, referred to as "billable work." Doc. #199, Ex. 7 ¶ 5. Once a client project is complete, or if the employee is removed from his position, the employee is placed

on "benched" status, where he continues to be paid while he searches for a new position on a different project. *Id.* ¶ 9; Doc. #138 ¶ 13. As positions become available, Defendant's Workforce Management Group looks for benched employees to match to the new position. Doc. #200, Ex. 2 at 19:15-25. If a benched employee does not secure a new position within a certain period of time, he will be terminated. Doc. #199, Ex. 7 ¶ 9.

Plaintiffs James Phillips and Robert Saemian (collectively "Plaintiffs") are both Caucasian American citizens who use to be employed by Defendant. Defendant hired Phillips in June 2013 to design Android applications for a client. Doc. #193 at 5. Though Phillips' role on the project was expected to end on December 31, 2013, he remained on the project until he was benched in March 2014. *Id.* at 5, 6. After failing to find a new project, Defendant terminated Phillips in June 2014. *Id.* at 7. Defendant hired Saemian in May 2014 as an Enterprise Asset Manager Practice Lead. *Id.* at 8. Based on his allegedly poor performance, including failure to complete sufficient billable work, Saemian was terminated in July 2015. Doc. #171 at 14–15. Neither plaintiff was promoted during his tenure with Defendant. *Id.* at 14.

Plaintiffs allege that Defendant utilizes discriminatory policies that favor employees of South Asian race or Indian national origin over all non-South Asian employees for U.S. positions and said policies result in lower promotion rates and higher termination rates for non-South Asian employees in career bands B1 through D2. *Id.* at 5. In 2015, Defendant had 12,479 employees in the United States, of which 69.5% were Indian citizens, 28.6% were American citizens, and 1.9% were citizens of "other" countries. Doc. #172, Ex. 1 at 6. The same year, Defendant received 5,968 H1-B visas from the United States government, which allow non-citizens to temporarily move to the United States for specialized work. Doc. #173, Ex. 2 at 8. Most visa holders who work for Defendant in the United States work for a specific division named "Wipro Technologies." Doc. #172, Ex. 7 at 3.

2

Based on Defendant's allegedly discriminatory practices, Plaintiffs assert claims for disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), as well as disparate impact in violation of Title VII. Doc. #137. "Plaintiffs seek, on their own behalf, and on behalf . . . of similarly situated individuals, declaratory, injunctive, and other equitable relief, compensatory and punitive damages" to redress Defendant's "pervasive pattern and practice of discrimination." *Id.* ¶ 2. Plaintiffs now move to certify the following classes and subclasses, but only as to the issues of classwide liability and injunctive relief:

1. **Promotions Class:** All persons not of South Asian race or Indian national origin who were employed by Defendant in the U.S. in job bands B1 through D2 (i.e., B1, B2, B3, C1, C2, D1, and D2) for at least twelve months and were not promoted during the time frame December 1, 2013 through December 31, 2018.
2. **Promotions Subclass**: The exact same class as that described in the Promotions Class, except limited to those individuals who worked in Defendant's Wipro Technologies division.
3. **Terminations Class**: All persons not of South Asian race or Indian national origin who were employed by Defendant in the U.S. in job bands B1 through D2 and were terminated between December 1, 2013 and December 31, 2018.
4. **Terminations Subclass**: The exact same class as that described in the Terminations Class, except limited to those individuals who worked in Defendant's Wipro Technologies division.

Doc. #171 at 15.

## II.   Legal Standards

### a.   Class Actions

Class Certification is governed by Federal Rule of Civil Procedure 23. To warrant class certification, all of Rule 23(a)'s threshold requirements must be satisfied as well as one of the three conditions contained in Rule 23(b). *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir.

3

2012). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of Rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (cleaned up). "The named plaintiffs, as the parties seeking certification, bear the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *Perry*, 675 F.3d at 837 (cleaned up).

### a. *Teamsters* Framework

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An individual plaintiff may sue for employment discrimination using the *McDonnell Douglas* framework, while the government or class action members can use the "pattern and practice" framework established in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360 (1977). *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001). Under the *Teamsters* framework, pattern or practice cases are typically bifurcated, beginning with a "liability phase" in which the plaintiffs must "demonstrate that unlawful discrimination has been a regular procedure or policy" of the employer. *Teamsters*, 431 U.S. at 360. If the plaintiffs succeed at the liability phase, the Court may order prospective relief, such as an injunction, and, if claimed, proceed to a second "remedial phase" to determine whether individual plaintiffs are entitled to relief. *Id.* at 361.

### III. Analysis

Plaintiffs primarily seek certification under Rule 23(b)(2) but argue that certification is appropriate under (b)(1)(A) and (b)(3) as well. Doc. #171 at 20, 24, 25. Rule 23(b) establishes

three "different types of class actions" limited to "specific kinds of relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412 (5th Cir. 1998). To determine which, if any, Rule 23(b) condition is applicable, "a court should certify a class on a claim-by-claim basis" and "examine each claim asserted by the class in the context of the composition of the class." *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000). "The composition of the class determines which of those types of relief the class is eligible for and would benefit from." *Id.*

Here, Plaintiffs assert claims for disparate impact and disparate treatment, seeking injunctive, declaratory, and monetary relief, "including (without limitation) punitive damages and compensatory damages." Doc. #137 at 20. However, Plaintiffs only seek class certification as to "the issues of classwide liability and injunctive relief" addressed in the liability phase of the *Teamsters* framework Doc. #173 at 15, 17, 26. If a jury finds in Plaintiffs favor at the liability phase, Plaintiffs propose that individual class members' claims for individual relief, such as front pay, back pay, and punitive and compensatory damages, proceed in a second remedial phase. *Id.* at 26; Doc. #137 at 20. Because the Court finds that Plaintiffs' claims do not meet any of the Rule 23(b) conditions under which certification is sought, it need not address the Rule 23(a) factors.

    a.   **Rule 23(b)(1)(A)**

To satisfy the requirements of Rule 23(b)(1)(A), Plaintiffs must show that separate lawsuits would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." "Varying results," however, do not necessarily create incompatible standards of conduct. *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010). Rather, there must be a risk to the party opposing certification "of not being able to comply with one such judgment without violating the terms of another." *Walker v. City of Houston*, 341 F. Supp. 1124, 1131 (S.D. Tex. 1971).

In the instant case, Plaintiffs allege that Defendant's employment policies discriminate against employees based on race and national origin and seek classwide injunctive relief requiring Defendant to apply promotion and termination policies fairly and uniformly regardless of race and national origin. Doc. #137. If potential class members bring these claims individually, each individual plaintiff's case is not likely to be heard by the same judge and may not even be filed in the same court. In such a situation, it is possible that some cases will result in a judge or jury agreeing with Plaintiff that Defendant's employment practices discriminate based on race and national origin and therefore such practices must be changed. In other cases, a different judge or jury might agree with Defendant that the same practices are not discriminatory and therefore do not need to be changed. While such outcomes would be inconsistent, they do not pose a threat of Defendant "not being able to comply with one such judgment without violating the terms of another." *See Walker*, 341 F. Supp. at 1131. Defendant could comply with the first court's order to change its employment policies without violating the second court's order, which merely states that Defendant is not required to change its policies. Because the second court's order does not prohibit Defendant from changing its policies, there is no risk of establishing "incompatible standards of conduct" for Defendant. *See* FED. R. CIV. P. 23(b)(1)(A).

Furthermore, though Plaintiffs do not seek to certify their claims for monetary relief, they still seek such relief. *Id.* at 20; Doc. #171 at 17. Therefore, it is worth noting that there is no risk of incompatible judgments regarding such relief. Paying one individual class member does not affect Defendant's obligation or ability to pay another individual class member. As such, the Court finds that certification under (b)(1)(A) is not required because separate actions would not necessarily lead to incompatible judgments. *See Casa Orlando*, 624 F.3d at 197–98.

b.  Rule 23(b)(2)

A court may certify a class action under Rule 23(b)(2) "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." In cases where the final relief requested includes monetary relief, certification under (b)(2) is only appropriate if the requested monetary relief "is incidental to requested injunctive or declaratory relief." *Allison*, 151 F.3d at 415. Certification under (b)(2) is inappropriate "when the majority of the class does not face future harm" and only stands to benefit from monetary relief. *Casa Orlando*, 624 F.3d at 200.

Here, Plaintiffs seek to certify as classes "all persons not of South Asian race or Indian national origin who were employed by Defendant in the U.S." and were either not promoted or terminated between December 1, 2013 and December 31, 2018. Doc. #171 at 15. Though Plaintiffs claim that injunctive relief in the form of "[a]n order requiring [promotion and termination] policies to be applied fairly and uniformly regardless of race and national origin would undoubtedly benefit most class members," they offer no evidence in support of this claim. *See* Doc. #223 at 10. As Plaintiffs concede, the injunctive relief sought would only benefit class members who are either currently employed by Defendant or seek reinstatement. *See id.*; *Dukes*, 564 U.S. at 364–65 (noting that the district court would have "to reevaluate the roster of class members continually" to ensure that only current employees are included in the (b)(2) class seeking injunctive relief regarding employment practices). Plaintiffs do not offer any evidence of what portion of the proposed classes meet this standard. *See id.* and Doc. #171.

By definition, members of the proposed termination class and sub-class are not current employees and would only benefit from the injunctive relief if they seek reinstatement. Plaintiffs offer no argument, let alone evidence, of what portion of these previous employees, who were terminated anywhere from three to eight years ago, seek reinstatement. Similarly, members of the

7

promotion class and sub-class, who were passed over for a promotion anywhere from three to eight years ago, would have to still be employed by Defendant to benefit from the injunction. For class members who would not benefit from the injunction, their claims can only be redressed through individual damages awards, which are not available under Rule 23(b)(2). Plaintiffs offer no means for the Court to determine whether the majority or only "a negligible portion" of the proposed class members are "properly seeking injunctive relief." *See In re Monumental*, 365 F.3d at 416.

Accordingly, the Court finds that Plaintiffs have failed to satisfy the burden of proof for (b)(2) certification.

c. **Rule 23(b)(3)**

Finally, to satisfy the requirements of Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(c)(4) permits a district court to certify "a class action with respect to particular issues," but the Fifth Circuit has explicitly rejected the "nimble use" of the rule to "manufacture predominance" for "the purposes of meeting the (b)(3) requirements." *Allison*, 151 F.3d at 422. Thus, while courts often bifurcate class actions by first addressing classwide liability before proceeding with individual proceedings, the Fifth Circuit has made clear that as a prerequisite to certification, courts must first determine whether the predominance requirement is satisfied by "assessing all the issues in a case—including damages—and deciding whether the common ones will be more central than the individual ones."[1] *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016); *In re Deepwater Horizon*, 739 F.3d 790, 807 n.66 (5th Cir. 2014).

---

[1] As such, certification is not independently appropriate based on Rule 23(c)(4).

Plaintiffs at bar claim that that they satisfy the (b)(3) predominance because they only seek certification as to the issues of injunctive relief and classwide liability and do not seek certification regarding individual relief. Doc. #171 at 25. Addressing nearly identical claims and the same attempt to utilize Rule 23(c)(4), the Fifth Circuit found that "certifying the first stage of the pattern or practice claim under (b)(3) is foreclosed" because allowing such a nimble use of Rule 23(c)(4) would result in "automatic certification in every case where there is a common issue." *Allison*, 151 F.3d at 421. Plaintiffs do not claim that common classwide questions predominate over individual questions when all issues in the case, including damages, are considered, nor do they attempt to distinguish *Allison*. *See* Doc. #223 at 11 and Doc. #171 at 25. As such, the Court finds that certification is not appropriate under (b)(3).

### IV.    Conclusion

In conclusion, the Court finds that Plaintiffs have failed to show their proposed class action satisfies any of the Rule 23(b) conditions. As to subsection (b)(1)(A), individual proceedings for the proposed class members' claims do not pose a risk of incompatible adjudications. The Fifth Circuit also precludes the use of Rule 23(c)(4) to certify a class action under (b)(3) only as to the first phase of a Title VII pattern-or-practice claim. And as to subsection (b)(2), Plaintiffs have failed to show that the injunctive relief requested would benefit a majority of the members of the proposed classes. Accordingly, Plaintiffs' Motion for Class Certification is hereby DENIED.

Furthermore, because the Court's determination regarding class certification does not depend on Plaintiff's expert reports, Defendant's Motions to Strike the Expert Reports of Dr. Davis Neumark (Doc. #184 and Doc. #230) and Dr. Ronil Hira (Doc. #228) are hereby DENIED as MOOT.

Additionally, because Defendant's Motion for Summary Judgment (Doc. #193), along with Plaintiffs' Response and Defendant's Reply, assume the class action framework applies, said motion is hereby DENIED without prejudice.

Finally, the parties are hereby ordered to submit a joint proposed scheduling order in light of this Order within fourteen (14) days from the entry of this order. In light of the long history of this case, the proposed deadlines should be consistent with a trail date in July 2022, if not earlier.

It is so ORDERED.

MAR 1 4 2022
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge